

SIGNED THIS 26th day of December, 2023

THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.

Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 13 |
| ) | |
| VANESSA LYRA PAR CRUZ ) | Case No. 23-70483 |
| ) | |
| Debtor. ) | |
| ) | |
| ADVANCIAL FEDERAL CREDIT UNION ) | |
| ) | |
| Plaintiff ) | Adversary Proceeding |
| ) | No. 23-07020 |
| v. ) | |
| ) | |
| VANESSA LYRA PAR CRUZ ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

This matter comes before the Court on a Motion to Intervene as a Party Defendant in Plaintiff's Complaint Seeking Determination of Nondischargeability of Debt and Motion for Leave to File Late Answer (collectively "Motion to Intervene") filed by Christopher T. Micale, the Chapter 13 Trustee ("Trustee"). AP ECF No. 5.[1] The Plaintiff, Advancial Federal Credit

---

[1] Citations to "AP ECF" refer to the Adversary Proceeding, No. 23-07020 (Bankr. W.D. Va.).

Union, filed an Objection to the Chapter 13 Trustee's Motion to Intervene as Party Defendant and Memorandum in Support ("Plaintiff's Objection") and the Trustee filed a Memorandum of Law in Further Support of His Motion to Intervene ("Response"). AP ECF Nos. 10 & 11. A hearing was held on the Trustee's Motion to Intervene on December 4, 2023. Upon review of the Parties' filings and the arguments advanced at the hearing, and for the reasons stated below, the Court will deny the Trustee's Motion to Intervene.

## **FACTUAL BACKGROUND**

This case arises from an alleged internet scam. The Plaintiff asserts that Vanessa Lyra Par Cruz ("Debtor" or "Defendant") had a credit card with the Plaintiff with a balance of $126,581.67 as of the petition date. *See* AP ECF No. 1 ¶ 26. However, the Debtor contends that this debt was rooted in the fraudulent activity of one Kyle Rose Mason ("Mason"), an alleged scammer who the Plaintiff contends: (1) persuaded the Debtor to send him gift cards of $100 each from retailers and to share her Advancial card information with him; (2) paid off the Debtor's purchases of these cards on the credit card through ACH fraud by using a bank account he did not own; and (3) left the Debtor to face the consequences when the reimbursement payments were "clawed back" in the ACH process and debited back to the Debtor's credit card with the Plaintiff. *See* AP ECF No. 1 ¶¶ 11–26; AP ECF No. 6 ¶¶ 16, 18, 21, 22, 25–26, 36–38, 45. Mason cannot be found (and may or may not even exist under that name), and the Plaintiff seeks to hold the Debtor liable for the debt given her alleged involvement in the scheme. *See* AP ECF No. 1.[2]

---

[2] The Debtor is described as a travel nurse from the Philippines with limited English language skills.

2

The Debtor filed a voluntary Chapter 13 petition in this Court on July 7, 2023, listing the debt to the Plaintiff as her only unsecured debt in her schedules. *See* Bankr. ECF No. 1.[3] The Debtor filed her first Chapter 13 Plan on July 7, 2023, and an Amended Plan on September 20, 2023. Bankr. ECF Nos. 5 & 21. The Plaintiff objected to its treatment under the Debtor's first Plan but did not file an objection to the Debtor's Amended Plan. *See* Bankr. ECF No. 17. On the other hand, the Trustee filed an objection to both of the Debtor's Chapter 13 Plans. Bankr. ECF Nos. 16 & 24. The Court confirmed the Debtor's Amended Plan on November 3, 2023, with an agreed order. Bankr. ECF No. 28.

The Debtor's descriptions of her credit card debt to the Plaintiff in her schedules and in her Statement of Financial Affairs reflect her contention that she was the victim of a scam, and her Chapter 13 Plan was confirmed with disclosure of her contentions. *See* Bankr. ECF No. 1. In fact, before the Debtor's Amended Plan was confirmed, the Plaintiff filed this Adversary Proceeding on October 12, 2023, seeking to have this Court determine that the debt owed to the Plaintiff is non-dischargeable under 11 U.S.C. §§ 523(a)(2) and (4), because it was a debt for money or credit obtained by fraud or larceny. *See* AP ECF No. 1. The Plaintiff alleges in its Complaint that the Debtor acted in furtherance of Mason's fraud and willfully participated in the scam. *See id.* ¶¶ 27–49. The Debtor filed an Answer to the Complaint on November 12, 2023, denying these allegations, and asserting that she is a victim of Mason's internet scam just like the Plaintiff. *See* AP ECF No. 6.

On November 10, 2023, prior to the Debtor filing her Answer, the Trustee filed the Motion to Intervene. AP ECF No. 5. The Trustee asserts the following: (1) he has an interest in the outcome of the Adversary Proceeding due to his trustee duties under 11 U.S.C. § 1302(b); (2)

---

[3] Citations to "Bankr. ECF" refer to the Debtor's primary bankruptcy case, No. 23-70483 (Bankr. W.D. Va.).

3

the purpose of the Bankruptcy Code is to provide debtors with a fresh start and, as Trustee, he has an interest in the success of each debtor's case; and (3) if the Court finds in favor of the Plaintiff in this case, it will have a chilling effect upon debtors who are victims of scams, impeding their right to a fresh start. *Id.* ¶¶ 2, 4–5. The Trustee further contends that his intervention would not prejudice or unduly delay the Plaintiff's rights and that intervention would be in the best interest of the estate. *Id.* ¶¶ 2, 6–7.

On November 20, 2023, this Court issued an Order Directing the Filing of Briefs in Support of or In Opposition to the Chapter 13 Trustee's Motions. AP ECF No. 8. The Plaintiff, by counsel, filed an objection to the Motion to Intervene on November 28, 2023. AP ECF No. 10. The Plaintiff argues that the Trustee has no right to intervene under Rule 24(a)(2)'s intervention as of right or permissively under Rule 24(b)(1)(B) because he only asserts generalized interests in debtors' fresh starts instead of an interest specific to this case. *See id.* ¶¶ 8–9. The Plaintiff also contends that the Trustee cannot demonstrate how these interests are prejudiced by the Court not allowing him to intervene or that Debtor's counsel cannot adequately represent the Trustee's interests. *See id.* ¶ 8.

The Trustee responded on November 30, 2023. AP ECF No. 11. In his Response, the Trustee contends that his interests in the Adversary Proceeding are specific to the action at hand and that not being allowed to intervene in the Adversary Proceeding will impair the Trustee's ability to perform his Section 1302(b) duties. *See id.* at 3–4. He also alleges that Debtor's counsel performs a different role in the bankruptcy case than the Trustee does which could lead to the Trustee's interests not being adequately represented. *See id.* at 5. Moreover, the Trustee highlighted how he could not oppose the Debtor's discharge under 11 U.S.C. § 1330(a) as part of his 11 U.S.C. § 704(a)(6) duties, as incorporated by Section 1302(b), if the Court finds that the

4

Debtor committed the alleged pre-petition fraud. *See id.* at 4. At the hearing on the Motion to Intervene, the Trustee's counsel conceded she could cite to no cases in which a court has allowed a Chapter 13 trustee to intervene in a non-dischargeability action in the manner sought in this case.

## JURISDICTION

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the referral made to this Court by Order from the District Court on December 6, 1994 and Rule 3(a) of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

## DISCUSSION

I.   The Applicable Legal Standard.

Intervention in adversary proceedings in bankruptcy cases is governed by Federal Rule of Bankruptcy Procedure 7024, which incorporates Federal Rule of Civil Procedure 24. *See* Fed. R. Bankr. P. 7024 (generally, "Rule 24"). Rule 24 contemplates two forms of intervention: intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b). Under Rule 24(a), upon timely motion, a court

> must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

5

Fed. R. Civ. P. 24(a). The Trustee makes no claim that a federal statute gives him an unconditional right to intervene within the scope of Rule 24(a)(1). He proceeds solely under Rule 24(a)(2).[4]

On the other hand, under Rule 24(b)(1), a court may, upon timely motion, "permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). A court therefore has discretion over whether to permit a party to intervene under Rule 24(b)(1). *See League of Women Voters v. Va. State Bd. of Elections*, 458 F. Supp. 3d 460, 466 (W.D. Va. 2020). Moreover, when deciding whether to permit a party to intervene under Rule 24(b)(1), a court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

II. <u>The Trustee's Right to Intervene under Federal Rule of Civil Procedure 24(a)(2).</u>

To intervene as a matter of right under Rule 24(a)(2) in the Fourth Circuit, a proposed intervenor must file a timely motion that shows: "(1) [an] interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-00066, 2018 U.S. Dist. LEXIS 185833, at *5 (W.D. Va. Oct. 30, 2018) (citing *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991)); *Galloway v. Williams*, No. 3:19-cv-470, 2020 U.S. Dist. LEXIS 141856, at *16–17 (E.D. Va. Aug. 7, 2020) (quoting *Scott v. Bond*, 734 Fed. App'x 188, 191 (4th Cir. 2018)); *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013). The movant bears the burden of demonstrating that "intervention is warranted under each of these factors." *League of Women Voters*, 458 F. Supp.

---

[4] There is no objection raised as to the timeliness of the Trustee's motion.

6

3d at 463. While a court has discretion to decide whether the moving party has satisfied its right to intervention under each of these factors, a court "should not consider judicial economy when evaluating a motion for intervention of right." *Titan Atlas Mfg. v. Sisk*, No. 1:11CV00012, 2014 U.S. Dist. LEXIS 27094, at *7 (W.D. Va. Mar. 4, 2014) (citing *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991)).

      A. The Trustee Has Not Demonstrated a Significantly Protectable Interest in the Adversary Proceeding.

Rule 24 does not specify what constitutes "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). Nonetheless, courts in the Fourth Circuit have stated that a proposed intervenor must demonstrate a "direct" interest in the proposed action that "bear[s] a close relationship to the dispute between the existing litigants" instead of one that is "remote or contingent." *RLI Ins. Co.*, No. 5:18-CV-00066, 2018 U.S. Dist. LEXIS 185833, at *7 (quoting *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D. Va. 1993)). Courts have also found that this interest must be "significantly protectable." *League of Women Voters*, 458 F. Supp. 3d at 464 (quoting *Donaldson v. United States*, 400 U.S. 517, 531, 91 S. Ct. 534, 27 L. Ed. 2d 580 (1971)). "[A] general interest in the subject matter of pending litigation does not constitute a protectable interest." *Dairy Maid Dairy, Inc.*, 147 F.R.D. at 111. Instead, courts have held that an interest is "significantly protectable" when the proposed intervenor "stand[s] to gain or lose by the direct legal operation of the [Bankruptcy] [C]ourt's judgment . . . ." *Galloway*, No. 3:19-cv-470, 2020 U.S. Dist. LEXIS 141856, at *32 (quoting *Teague*, 931 F.2d at 261).

Further, the Fourth Circuit has also ruled that "an interest contingent on the outcome of other pending litigation qualifies as 'significantly protectable.'" *Linkous v. Am. Alt. Ins. Corp.*, No. 7:11-cv-278, 2011 U.S. Dist. LEXIS 118107, at *5 (W.D. Va. Oct. 12, 2011) (quoting

7

*Teague*, 931 F.2d at 261). It is also notable that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (internal quotation marks and citation omitted); *Titan Atlas Mfg.*, No. 1:11CV00012, 2014 U.S. Dist. LEXIS 27094, at *8.

Here, the Trustee alleges a mixed bag of interests in this action. In his Motion to Intervene, the Trustee contends that his interest arises from the Bankruptcy Code's purpose of providing debtors with a fresh start, and as the Trustee he "has an interest in the success of each Debtor's case." AP ECF No. 5 ¶ 4. The Trustee further asserts that "a ruling that debts of such nature are non-dischargeable by virtue of an agency relationship will have a chilling effect on Debtors who have fallen victim to scams, impeding their right to a fresh start." *Id.* ¶ 5. Further, in his Response, the Trustee reiterates this alleged interest, but also asserts more "specific" interests stemming from his Section 1302(b) trustee duties that according to the Trustee "fall within the penumbra" of the significantly protectable interest test. AP ECF No. 11 at 3. First, he contends that Section 704(a)(4), which is incorporated by Section 1302(b), gives a Chapter 13 trustee the duty to "investigate the financial affairs of the Debtor." *Id.* (emphasis omitted). The Trustee alleges that "facts of the Complaint directly implicate the financial affairs of the Debtor by alleging the Debtor made false representations and committed actual fraud and larceny," so the Trustee needs to be allowed to intervene in the action to investigate. *Id.*

Additionally, the Trustee alleges that denial of the Motion to Intervene "impedes protection of the estate" because the Debtor "may be the victim of a common social engineering scheme and the estate may possess an action against the perpetrator." *Id.* at 3–4. The Trustee stated that since the "heart of the adversary will reveal the continued viability of the investigation

8

and whether claims may be brought against anyone by the Trustee," the Trustee needs to be a direct participant in this action to ensure the Debtor's financial affairs are properly investigated and protected. *Id.* at 4.

Finally, the Trustee alleges that his interest in the action stems from his Section 704(a)(6) duties, incorporated in Section 1302(b), to oppose the discharge of the Debtor. *See id.* The Trustee contends that if the Court does not allow his intervention in the Adversary Proceeding and the Adversary Proceeding reveals the Debtor's fraud, he cannot properly oppose the Debtor's discharge under Section 704(a)(6) or make a motion to revoke the confirmation order for the Debtor's confirmed Plan under Section 1330(a). *See id.*

In support of these allegations, the Trustee cites no case in which a court has found a Chapter 13 trustee's Section 1302(b) duties create a "significantly protectable interest" in a non-dischargeability action (and the Court has found none). Further, the Trustee asserts an interest in the "fresh start" of every debtor and the potential "chilling effect" this action could have on future debtors suggesting a significantly protectible interest. *Id.* at 4–5. These interests, too, to the extent they exist, are general interests not within the scope of Rule 24(a)(2). Indeed, if an interest in the Debtor's fresh start was a foundation the Trustee could stand upon, it would be a gateway to mandatory intervention in almost any non-dischargeability litigation. The Court does not believe that to be the case. Therefore, these general interests are not "significantly protectable" within the scope of Rule 24.[5]

---

[5] 11 U.S.C. § 307 provides that the United States Trustee "may raise and may appear and be heard on any issue in any case or proceeding under this title but may not file a plan pursuant to section 1121(c) of this title." There is no comparable code section for a Chapter 13 trustee. Moreover, to the extent that the Trustee argues that he needs to intervene to protect the Debtor's fresh start, Debtor's counsel is an experienced and skilled practitioner before this Court. The Court has little concern about whether that interest is adequately represented.

While the Trustee's more specifically stated interests, such as investigating the Debtor's financial affairs and potentially opposing the Debtor's discharge, may on the surface seem to have more substance, they ring hollow in the circumstances of this case. The Debtor's schedules and the objections on file placed the Trustee on notice well before confirmation of the Debtor's Chapter 13 Plan that there was a scam at the center of this case. If the Trustee had meaningful concerns over the Debtor's conduct here, those interests could have been probed pre-confirmation. For example, if there was suspicion that the Debtor was engaged in pre-petition misconduct that would bear on her ability to have a Chapter 13 plan confirmed or a discharge granted, the Trustee could have conducted a Rule 2004 examination early on. The Trustee did not. The matters that give the Trustee concern now have existed from the outset in this case, and that a creditor has chosen to pursue a non-dischargeability action against the Debtor in what appears to be a two-party dispute comes as no surprise. The Plaintiff telegraphed its punch in its objection to confirmation of the Debtor's first Chapter 13 Plan. *See* Bankr. ECF No. 17. That the Trustee did not raise his hand earlier is indicative of the lack of substance to the concerns he raises now. Using Rule 24's language, as a "practical matter," there is no substantive impairment of or impediment to the Trustee's rights within the scope of Rule 24(a)(2).

The Court also notes that the Trustee concentrates his argument on the alleged impairment of his interests under Section 704(a)(6). The Trustee argues that Section 704(a)(6) imposes the duty to oppose the Debtor's discharge which the Trustee contends he may need to do if the Court finds that the Debtor committed the alleged pre-petition fraud. Specifically, the Trustee contends that if the Court found that the Debtor did indeed engage in fraud and larceny as the Plaintiff alleges, "the Trustee would be placed into a position to revoke the confirmation

10

order under 11 U.S.C. § 1330 and oppose discharge based on the order being procured by fraud." AP ECF No. 11 at 4.

Under Section 1330(a), after request by an interested party, "at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if *such order was procured by fraud*." 11 U.S.C. § 1330(a) (emphasis added). In this action, the fraud that is the Trustee's concern and the fraud that the Plaintiff is pursuing are apples and oranges. They are two different things. The Plaintiff does not argue that the Debtor used fraud to obtain confirmation of her Amended Plan. Yet, this is the articulated concern of the Trustee under Section 1330(a). However, the allegations at issue in this action are that the Debtor was a participant in a pre-petition fraud directly perpetrated on the Plaintiff by Mason. They are two completely different types of fraud. One does not necessarily dovetail with the other. In fact, as discussed above, the Debtor was open in disclosing the existence of the internet scam at issue in this case, and the Plaintiff made clear pre-confirmation that it intended to file non-dischargeability litigation against the Debtor. No one was misled or duped in obtaining the confirmation order.[6] Thus, the Court finds no basis for intervention by the Trustee under Rule 24(a)(2).

---

[6] "To support a complaint for the revocation of confirmation, the majority of courts have held that the following five elements of fraud at common law must be proven by clear and convincing evidence: (1) that the debtor made a representation regarding . . . compliance with Section 1325 which was materially false; (2) that the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth; (3) that the representation was made to induce the court to rely upon it; (4) the court did rely upon it; and (5) that as a consequence of such reliance, the court entered the confirmation order." *Johnson v. Stemple (In re Stemple)*, 361 B.R. 778, 797 (Bankr. E.D. Va. 2007) (citation omitted). No such allegations are made or even suggested here.

    III.    <u>The Trustee Has Not Demonstrated a Basis for Permissive Intervention under Federal Rule of Civil Procedure 24(b)(1)(B).</u>

The Court next turns to the Trustee's second basis for intervention, that of permissive intervention under Rule 24(b)(1)(B). Under Rule 24(b)(1)(B), a court has the discretion to permit a party who has filed a timely motion to intervene in an action if the Court finds that the movant has established the following: (1) the movant's "claims or defenses have a question of law or fact in common with the main action" and (2) "intervention will not result in undue delay or prejudice to the existing parties." *RLI Ins. Co.*, No. 5:18-CV-00066, 2018 U.S. Dist. LEXIS 185833, at *13 (citing *Wright v. Krispy Kreme Doughnuts, Inc.*, 231 F.R.D. 475, 479 (M.D.N.C. 2005)).

A trial court has "wide" discretion in deciding whether to grant or deny intervention under Rule 24(b). *E.g.*, *Alt v. U.S. Envtl. Prot. Agency*, 758 F.3d 588, 591 (4th Cir. 2014) ("[W]e have emphasized that a court's discretion [in resolving motions to intervene] is 'wide.'" (citation omitted)); *League of Women Voters*, 458 F. Supp. 3d at 466; *Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 454–55 (E.D. Va. 2019). Courts have also found that a moving party must show that it has "more than a general interest in the subject matter of the litigation before permissive intervention is allowed." *Abney v. I.T.T. Diversified Credit Corp. (In re Envtl. Elecs. Sys., Inc.)*, 11 B.R. 962, 964 (Bankr. N.D. Ga. 1981) (citing *Alexander v. Hall*, 64 F.R.D. 152 (D.S.C. 1974)).

The Plaintiff argues that the Trustee has no right to permissive intervention here because he merely has, at best, a general interest in the Adversary Proceeding. *See* AP ECF No. 10 ¶ 9. To counter this, the Trustee argues that his claim and defenses do share a common question of law and fact with the Adversary Proceeding because he is a trustee operating under a confirmed plan and thus oversees the unsecured debt at the heart of the Adversary Proceeding. *See* AP ECF

No. 11 at 5–6. According to the Trustee, "intervention will not unduly delay or prejudice the adjudication of the Plaintiff's rights" and "it is in the best interest of the estate that the Trustee be allowed to intervene as a party defendant to oppose the Plaintiff's Complaint." AP ECF No. 5 ¶¶ 6–7. The Trustee's counsel offered no additional arguments or evidence to support these contentions at the December 4 hearing. The Trustee's arguments are too thin for permissive intervention under Rule 24(b)(1)(B).

The Trustee provides the Court with no precedent to support his contention that he has anything "more than a general interest in the subject matter of the litigation." *In re Envtl. Elecs. Sys., Inc.*, 11 B.R. at 964. The question of obtaining confirmation by fraud, as demonstrated above, is a different fraud than that alleged by the Plaintiff. It is not one of shared law or fact. Thus, in the exercise of its discretion under Rule 24(b), the Court will deny the Trustee's Motion to Intervene under Rule 24(b)(1)(B).

IV. <u>Federal Rule of Bankruptcy Procedure 6009.</u>

Although no party raised it, the Court asked the parties to address the application of Rule 6009 to this case, if it applies at all. *See* AP ECF No. 14. That Rule provides as follows:

> With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.

Fed. R. Bankr. P. 6009. Not surprisingly, the Plaintiff dismisses its application, while the Trustee contends it supports intervention. *See* AP ECF Nos. 15 & 16.

The Court does not believe Rule 6009 supports intervention. The Rule falls within those rules contained in Part VI of the Bankruptcy Rules, "Collection and Liquidation of the Estate." There is no property of the estate to be collected or liquidated in the pending non-dischargeability litigation. Moreover, the Rule provides that "the trustee or debtor in possession

13

may . . . defend any pending action or proceeding by or against the debtor." It does not say they may both appear and defend the debtor. Here, the Debtor, who remains in possession of all property of the estate except as provided in her confirmed Chapter 13 Plan, is defending her interests with capable counsel. 11 U.S.C. § 1306(b). The Chapter 13 Plan does not provide otherwise. Rule 6009 does not give the Trustee an unfettered right to intervene, especially in the circumstances of this case where no assets of the estate are implicated.

## CONCLUSION

For all the above reasons, the Trustee's Motion to Intervene as a Party Defendant in Plaintiff's Complaint Seeking Determination of Nondischargeability of Debt and Motion for Leave to File Late Answer are denied. A separate order will follow.